220 So.2d 575 (1969)
Landry O. CLEMENT, Plaintiff-Appellee,
v.
FIDELITY & CASUALTY COMPANY OF NEW YORK, Defendant-Appellant.
No. 2599.
Court of Appeal of Louisiana, Third Circuit.
March 19, 1969.
*576 Stockwell, St. Dizier, Sievert & Viccellio, by Robert W. Clements, Lake Charles, for defendant-appellant.
Payton R. Covington, Lake Charles, for plaintiff-appellee.
Before FRUGÉ, HOOD, and CULPEPPER, JJ.
FRUGÉ, Judge.
This is a workmen's compensation suit wherein the plaintiff, Landry O. Clement, seeks recovery of benefits for total and permanent disability. The disability results from two separate accidents which he allegedly sustained while working for G. B. Zigler Shipbuilding Company, the insured. After trial on the merits, the trial court found judgment in plaintiff's favor, awarding him total and permanent disability benefits and medical expenses. From this judgment the defendants have appealed, and plaintiff has answered claiming penalties and attorney's fees.
Defendants contend that the trial court committed manifest error when it found that the accidents had occurred, and also found that plaintiff was totally and permanently disabled even if the injury was due to a pre-existing arthritic condition in plaintiff's back. They can conceive of no basis of liability for disability, even if plaintiff is unable to work, for the disability would be due to a pre-existing condition, not the employment.
Plaintiff contends that the injuries which he received in both accidents aggravated the pre-existing arthritic condition in his back, and as a result thereof, this aggravation has become symptomatic to the extent that he is disabled from performing manual labor.
This case presents two issues for determinationfirst, the occurrence of the two accidents, and second, the question of plaintiff's disability.
Before proceeding further, it would be well to note that the factual determinations *577 of the trial court will not be disturbed on appeal unless there is manifest error. This rule is particularly applicable here, since the trial court's determination was mainly based on an evaluation of the credibility of the opposing witnesses. Lewis v. Liberty Mutual Insurance Company, 215 So.2d 138 (La.App.3d Cir., 1968) and citations therein.
I-THE TWO ACCIDENTS.
Plaintiff alleges, as a basis for his cause, that he sustained two accidents while working within the course and scope of his employment. The first of these occurred on October 17, 1966. While he was unloading pipe approximately nine inches by forty-seven feet, a pin holding them broke, causing the pipes to fall, striking plaintiff and knocking him under a freight car.
The second accident allegedly occurred on August 21, 1967, while plaintiff was working inside a barge, and a ladder upon which he was climbing fell.
With regard to the first accident, defendant does not seriously dispute its occurrence and, in fact, it paid workmen's compensation benefits until the latter part of February, 1967, when plaintiff returned to work. As to the second accident, however, the defendant strongly contends that the proof is insufficient to maintain the occurrence of the accident.
The August 21, 1967 accident was not witnessed by any of plaintiff's fellow employees. Plaintiff alleges that while he was working on the inside of a barge, he decided to go topside for a drink of water, and as he was in the process of climbing a ladder, the ladder slipped, throwing plaintiff down onto the bottom of the barge, where he landed on a strip of "angle iron", which caused him to injure his chest and back.
Plaintiff's co-workers testified that they had not witnessed the accident, nor had they heard it happen, but they readily admitted that immediately after the accident plaintiff complained to them of the occurrence of the accident. It must be noted that the accident occurred in the interior of a barge at a time when there were many employees welding and hammering on this all-metal construction. According to the testimony of the co-workers, it would not have been unusual for such a sound, as plaintiff's fall from a ladder, to go unnoticed.
Although plaintiff was the only one who testified in regard to the accident, it is a sound principle within our jurisprudence that an accident can be established by the testimony of the claimant alone, if his statements are supported by the surrounding circumstances, and there is nothing to discredit his testimony as to how the accident occurred. Delafosse v. Industrial Painters, Inc., 199 So.2d 559 (La.App.3d Cir., 1967); Hayes v. Louisiana Irrigation & Mill Company, 168 So.2d 396 (La.App. 3d Cir., 1964) and authorities cited therein.
We have noted no inconsistencies in plaintiff's testimony, and there is the presence of sufficient corroborating evidence to warrant a conclusion identical to that of the trier of facts, that is, that the accident of August 21, 1967, did in fact occur.
II-DISABILITY.
After the first accident, that of October 17, 1966, plaintiff was unconscious for a short time, but declining to see a doctor, he finished the day. After work plaintiff sought treatment for back and chest pains. Within the period of a few weeks, plaintiff went from physician to physician, all of them diagnosing his problem as a fractured rib. On January 24, 1967, he was sent by the company to Dr. Sabatier. Plaintiff was seen by Dr. Sabatier approximately twice a month from that time until trial.
During the first few months of treatment, Dr. Sabatier was not of the opinion that the arthritis was of a rheumatoid variety. Although plaintiff had never had such complaints, Dr. Sabatier now found complaints of pain in the upper lumbar region *578 or lower thoracic region on the left side, and also an area in the left anterior chest region that was tender. The X-rays revealed a fracture of the left sixth rib and some moderate degenerative arthritic changes in some of the vertebrae of the lower thoracic vertebrae. Dr. Sabatier prescribed salicylates, some endosin, as medication for relief of the arthritic pain and for relief on non-specific inflammatory changes.
In February of 1967, plaintiff was referred to Dr. Jerome Ambrister, an orthopedic surgeon in Lake Charles. Dr. Ambrister was of the opinion that plaintiff's rib had healed with no residual, and that although plaintiff had a mild degree of arthritic changes in his lower back region, these were compatible with his age and type of employment. He felt that plaintiff was physically able to return to his usual duties as a laborer in a shipyard.
On February 21, 1967, plaintiff returned to work but stayed under the care of Dr. Sabatier. Plaintiff worked for four weeks but due to pain had to quit for four weeks. Dr. Sabatier discharged plaintiff to return to work on March 30, 1967, but it is to be noted that it was with the strict qualification that plaintiff would only be assigned to light duties.
During the time between the two accidents, plaintiff worked as a helper to a ship fitter, Leon Clement, of no relation to claimant. Mr. Clement verified that plaintiff was unable to do the work required of him as a helper during this time, and he testified that he had to do extra work in an attempt to cover for plaintiff.
As to the second accident, the day after the accident, August 22, 1967, plaintiff was seen by Dr. Sabatier and hospitalized by him. Dr. Sabatier found that he was complaining of pain in the left flank and the lower back, with tenderness there, and muscle spasms were evident in the lumbar region. After being hospitalized for a day or two, claimant developed swelling of the left ankle, which became red, hot and tender, and he complained of pain in the other ankle and both knees. It was then that Dr. Sabatier interpreted plaintiff's ailment as an "acute flare-up of a rheumatoid type of arthritis". Dr. Sabatier felt that the flareup was caused by the fall in that the fall had aggravated the arthritic condition, making it painful. He stated in testimony:
"Now, there's no doubt in my mind that his injury is what made the pain. I mean, he didn't have it before he got hurt, and then he had pain, but the disease was there, and the same thing in the second accident. I think the fall is what made the ankles and the knees act up. * * *"
As to his disability, the doctor testified that at times plaintiff could do the work as a heavy laborer but he felt that when plaintiff got into this heavy work he was going to have more pain, and that it would last for a few days and then get better again. The sequence of work, then aggravation, then pain would go on indefinitely.
Dr. Ambrister re-examined plaintiff on March 13, 1968, the day prior to the March 14 trial. He noted changes in the anterior margin of the first, fourth, and fifth lumbar vertebral bodies, which could have been aggravated by a traumatic condition. Also noted were plaintiff's complaints of pain in the left chest and low back region, and some tenderness. Dr. Ambrister was of the firm opinion that plaintiff's arthritic condition was hypertrophic, not rheumatoid, the difference being in the amount of trauma necessary to cause aggravation. He felt that any aggravation of the pre-existing mild hypertrophic arthritis had subsided in the interval since the injury or re-injury and the date of the examination. Due to the lack of sufficient objective findings on physical and X-ray examination, he felt that the patient had completely recovered from whatever injury or injuries he may have incurred at the time of the two alleged accidents, and that he could return to work.
*579 This court notes some conflict in the medical testimony as to the disability of plaintiff, but the opinion of Dr. Sabatier, the treating physician, we believe is entitled to more weight than that of the medical expert who only had the opportunity of observing plaintiff on two occasions. Dr. Sabatier's opinion, based on his long treatment of plaintiff and the time plaintiff spent in the hospital, was of the firm conviction that plaintiff's condition was rheumatoid arthritis. The condition no doubt pre-existed the accidents, but it was aggravated by the accidents, and will last indefinitely. Hard labor will always aggravate this condition, make it painful and prevent plaintiff from doing hard manual labor.
In addition to the medical testimony, the lay testimony of plaintiff's friends and coworkers supports plaintiff's allegation of the occurrence of the accidents. As well, there was much testimony indicating that plaintiff cannot perform the work he was accustomed to, and that he constantly complains, even at home, of the aches and pains of which he suffers.
III-THE LAW.
The principle is well established in the jurisprudence of this state that the employer takes the employee as he finds him. The worker who is normally susceptible to disability from an accident is entitled to the full protection of the compensation statute, even though the same accident would cause little or no harm to a healthy worker. Nor is it important that the diseased or weakened condition might alone have eventually produced the disability. An employee's disability is fully compensable when precipitated by an industrial accident, even though caused, also, by a contributing, pre-existing, dormant physical condition, or pre-disposition. Parish v. Fidelity & Casualty Company of New York, 124 So.2d 234 (La.App.2d Cir., 1960), cert. denied, and citations therein.
In light of the aforesaid applicable legal principles, and after a thorough consideration of both the lay and the medical testimony, the conclusion is inescapable that the falls at work did activate a dormant or asymptomatic (painless) rheumatoid condition, and that as a result of which aggravation, plaintiff is unable to perform without substantial pain, the heavy lifting and heavy duties normally incident to and constituting a substantial function of his employment at the time of the accident. For that reason plaintiff is totally and permanently incapacitated from the performance of his former occupation, and was, therefore, properly awarded compensation for total and permanent disability.
The trial judge, in his written reasons for judgment, correctly summarized this case as follows:
"This is the classical but difficult case where the rule is that the employer takes the employee in the condition in which he finds him. This employee had worked at hard manual labor for many years without exhibiting any of the symptoms which now establish that he is totally and permanently disabled. The employee established that he suffered two serious accidents which aggravated his dormant condition. Plaintiff is, therefore, entitled to recover total and permanent disability benefits. * * *"
After a close reading of the record in this case, we are of the opinion that there was sufficient controversy over the disability of claimant to absolve the defendant in this case from the payment of penalties and attorney's fees.
For the foregoing reasons, the judgment of the trial court awarding plaintiff benefits for total and permanent disability and awarding him benefits for a term not to exceed four hundred weeks, is found to be free of manifest error in law or in fact, and for that reason, is affirmed.
Costs to be paid by defendant-appellant.
Affirmed.