252 So.2d 675 (1971)
Walter WEBRE (Webb)
v.
SERVICE PAINTING COMPANY OF BEAUMONT and the Phoenix Insurance Company.
No. 8502.
Court of Appeal of Louisiana, First Circuit.
September 2, 1971.
William Luther Wilson, of Taylor, Porter, Brooks & Phillips, Baton Rouge, for appellant.
Louis D. Curet, of D'Amico, Curet & Bush, Baton Rouge, for appellee.
*676 Before LANDRY, BLANCHE and TUCKER, JJ.
LANDRY, Judge.
Defendants, Service Painting Company of Beaumont (Service), and its insurer, Phoenix Insurance Company (Phoenix), appeal a judgment granting plaintiff, Webre, workmen's compensation benefits for total permanent disability. A single factual question is presented, namely, was plaintiff injured within the scope and during the course of his employment by Service as a painter's helper? We affirm the judgment which held that plaintiff was injured in the scope and course of his employment.
The salient issue is whether plaintiff proved the occurrence of an accident by a preponderance of evidence as required by law. More particularly, the issue is whether plaintiff's testimony concerning the occurrence of the accident is adequately corroborated.
Plaintiff is a widowed, forty year old manual laborer with six minor dependent children. Plaintiff attended school nine years. He completed the third grade after spending three years in each of the first three grades. As a painter's helper, plaintiff's duties consisted of lifting five gallon cans of paint, weighing 85 to 90 pounds, and 100 pound sacks of sand used in sandblasting operations.
In essence plaintiff's testimony is to the effect that he injured his back on August 23, 1968, when his foot slipped as he was lifting a can of paint. He immediately experienced pain, but thought that it would subside so he continued working. He was working at the time with co-employees, Steve Porche, Pat Bizette and Roland Davied, but he did not report the incident to these parties or to his immediate superior. The following day, Saturday, August 24, 1968, plaintiff moved from his residence to another location. He was assisted in this undertaking by fellow workers, Jimmy Chustz and Emeric David. The named parties moved plaintiff's furniture because plaintiff was unable to lift anything on this occasion due to pain in his back. He worked throughout the week of August 26 to August 30, 1968, but did not report the incident to anyone even though he was aware that it was customary to report job related injuries when they occurred. He explained his silence in this regard by stating that economic necessity constrained his continued employment to support his ailing wife (who was then living) and his dependent children. During the week of August 26 to 30, plaintiff worked in pain but slowed down somewhat. He eased his burdens by dragging rather than lifting paint cans. On Saturday, August 31, 1968, plaintiff remained at home. The following Monday, September 2, 1968 (Labor Day), plaintiff drove a farm tractor for an acquaintance, but performed no manual labor.
On the morning of September 3, 1968, before commencing work, plaintiff informed his foreman, James O. Porche, that plaintiff had injured his back on the job and was not certain he could continue working. Plaintiff informed Porche that plaintiff would attempt to work. Plaintiff then lifted one bag of sand and found he was unable to work because of pain. Plaintiff stated that during the previous week he could lift sand bags with comparative ease because he was lifting bags from stacks well above ground level. On September 3, 1968, the stack of bags had been reduced to near ground level and plaintiff found the back bending required under the circumstances was too painful to endure. That same day Porche took plaintiff to Dr. Jere Melilli for treatment.
Mr. Porche testified in substance that plaintiff reported the accident and injury on the morning of September 3, 1968, at which time plaintiff was bent over and appeared to be in pain. He acknowledged that prior to that time plaintiff had always been a reliable worker, and had never complained of pain. He also stated that plaintiff told him that plaintiff had injured *677 himself Friday, and Porche assumed plaintiff meant Friday, August 30, 1968. Porche also stated that on September 3, 1968, plaintiff was working with Steve Porche and Pat Bizette, and that on August 29, 1968, and prior thereto, plaintiff was working with Roland David, not Steve Porche.
James Lee Chustz and Emeric David, Jr. acknowledged having assisted plaintiff in moving his furniture on Saturday, August 24, 1968. Both testified that plaintiff did not handle any of the furniture himself. Mr. David additionally stated that on this occasion, he noted that plaintiff was stooped, and also deposed that plaintiff told him that plaintiff had injured his back.
Walter Kimball confirmed the fact that plaintiff drove a tractor for him on Monday, September 2, 1968. He also stated that plaintiff told him that he could only drive the tractor, and could not perform such other tasks as hitching a trailer to the tractor because plaintiff had hurt his back. Kimball added that on this occasion, he observed that plaintiff walked one-sided.
Plaintiff's co-workers, Roland J. David and Gary Patrick Bizette, testified that they worked with plaintiff from August 23, to August 29, 1968, during which period plaintiff made no complaint of pain. Neither witness observed any indication that plaintiff was disabled. They also explained that they were engaged in sandblasting which required their undivided attention.
On September 3, 1968, plaintiff was examined by Dr. Jere Melilli who found plaintiff suffering from muscle spasm in the paraspinous and lumbosacral muscle groups. Plaintiff stated he had injured his back two week earlier and had also experienced a more recent reinjury. Plaintiff complained of pain rediating down his left leg which condition appeared connected with the left sciatic nerve. Plaintiff's condition was diagnosed as acute lumbosacral strain and irritation of the left sciatic nerve. Dr. Melilli prescribed muscle relaxants, physical therapy, ultra-sound therapy, diathermy and injections. Plaintiff was under Dr. Melilli's care until September 16, 1968, on which date plaintiff was referred to an orthopedic specialist because Dr. Melilli thought plaintiff might have a ruptured intervertebral disc. As of September 16, 1968, Dr. Melilli considered plaintiff unable to perform heavy manual labor.
Dr. Herbert K. Plauche, orthopedic surgeon, initially saw plaintiff on September 17, 1968, pursuant to referral by Dr. Melilli. Plaintiff asserted he injured his back three weeks earlier while lifting a heavy object. The history related by plaintiff indicated immediate dull aching pain in the lumbosacral area, radiating into the left lower back and hip. Plaintiff continued work for a week while continuing to experience pain. Additionally, plaintiff stated he felt a numb, tingling sensation in his left foot and toes and averred that the pain increased markedly upon strenuous activity or arising from a supine position. Dr. Plauche noted several objective symptoms such as excessive lumbar lordosis or curvature, moderate to marked muscle spasm of the paraspinous muscle in the lumbosacral area upon palpation, severe limitation of motion of the back in forward extension and flexion and a painful gait with a list to the left and forward. Plaintiff's condition was diagnosed as spondylolysis at L-5 with spondylolisthesis of L-5 on S-1, with some evidence of first sacral nerve root irritation on the left side. Dr. Plauche explained that spondylolysis is a defect in the vertebral bone which is congenital in most cases, but which can also result from trauma. He explained further that spondylolisthesis is the displacement of one vertebra upon another and that both spondylolysis and spondylolisthesis may be asymptomatic and become symptomatic due to trauma. X-rays taken by Dr. Plauche confirmed his diagnosis.
Dr. Plauche considered plaintiff's spondylolysis to be congenital. He hospitalized *678 plaintiff from September 17 to September 22, 1968, and again from September 30 to October 7, 1968. Treatment consisted of traction, analgesics, relaxants and diathermy. Upon release from the hospital, plaintiff was fitted with a back brace. Dr. Plauche observed that he has treated plaintiff to the date of trial at which time plaintiff was disabled from heavy work and would continue so indefinitely. In Dr. Plauche's opinion, plaintiff possibly has a ruptured disc. Dr. Plauche observed that acute back strain symptoms usually become manifest within 24 to 48 hours following injury. He also noted that plaintiff would have experienced considerable difficulty in lifting weights of 80 to 100 pounds following an acute back strain as plaintiff evidently experienced. In Dr. Plauche's opinion, it was doubtful that plaintiff could have worked a week following August 23, 1968, if plaintiff suffered acute back strain on that date. He conceded, however, that the initial strain may have been mild and have become acute at a later date due to strenuous lifting by plaintiff. He also noted that successive strains on August 23, and September 3, 1968, would be compatible with plaintiff's condition.
The trial court concluded that plaintiff was in fact injured during the course of his employment. The trial court also found that plaintiff's failure to mention his injury to his co-workers was due to plaintiff's limited education and low mentality and the fact that plaintiff was not inclined to be outspoken and had few friends. The lower court also found that plaintiff's failure to report his injury to his foreman was due to plaintiff's fear of losing his employment, and that consequent effect thereof on his dependents. Additionally, the trial court found that plaintiff's pre-existing spondylolysis and spondylolisthesis were aggravated by injuries sustained on August 23 or September 3, or both. We agree.
In his reasons for judgment, the trial court noted that the degree of proof required in a compensation case is less onerous than in ordinary tort proceedings. Appellants maintain the trial court erred in so holding, and also erred in finding for plaintiff when the record fails to establish the occurrence of an accident by a preponderance of evidence as required in actions in general. Appellants also complain that the trial court erred in admitting Dr. Melilli's testimony notwithstanding plaintiff's total permanent disability is conceded. Additionally, appellants contend the lower court erred in awarding benefits upon plaintiff's uncorroborated testimony contrary to established jurisprudence.
The trial court's observation that a lesser burden of proof obtains in compensation cases was clearly erroneous. It is well settled that in a workmen's compensation suit, plaintiff must establish his claim by a preponderance of evidence, and to a legal certainty as is required in civil cases in general. Guillory v. New Amsterdam Casualty Company et al., 244 La. 225, 152 So.2d 1. We find, however, that the trial court's misstatement of the law in this respect is of no moment under the circumstances of this case. Despite his erroneous statement of applicable law, the record shows that the trial judge nevertheless found in effect that plaintiff had established his cause by a preponderance of evidence. We concur in this finding for the reasons hereinafter set forth.
Appellants, relying upon Lewis v. Celotex Corporation, La.App., 222 So.2d 647, and Morris v. Kaiser Aluminum and Chemical Company, La.App., 228 So.2d 261, maintain that plaintiff's uncorroborated testimony is insufficient to establish his case in the absence of substantiating medical testimony. We note inconsistency in appellants' contentions. On the one hand, it is urged that Dr. Melilli's testimony is inadmissible because plaintiff's total and permanent disability is conceded. On the other hand, appellants argue that absent Dr. Melilli's testimony, plaintiff's *679 cause must fail because of lack of medical substantiation.
It is settled law that a claim for workmen's compensation benefits may be sustained upon plaintiff's uncorroborated testimony as to the occurrence of the accident where the attending facts and circumstances do not discredit plaintiff's testimony, and plaintiff's testimony is substantiated by the attending facts. Verbois v. Standard Accident Company, La.App., 25 So.2d 97; Clark v. Glenwood Hospital, Inc., La.App., 165 So.2d 540. Great weight is to be given a claimant's statements in a compensation case where medical diagnosis and opinion as to the nature and extent of injury depends largely upon subjective symptoms, and the record is barren of evidence giving cause to doubt claimant's veracity. Vidrine v. American Employers Insurance Company, La.App., 129 So.2d 288. The trial court's findings of fact will not be disturbed unless shown to be manifestly erroneous. Monjure v. Argonaut Insurance Companies, La.App., 239 So.2d 488. Veracity and credibility of a claimant are of paramount importance where an issue in a compensation case is predicated largely or entirely on claimant's testimony. Smith v. E. I. Du Pont De Nemours & Company, La. App., 185 So.2d 55.
Inconsistencies in a compensation claimant's statements are not per se sufficient to warrant the conclusion that the trial court manifestly erred in accepting claimant's testimony as true. Saia v. Hartford Accident and Indemnity Company, La.App., 214 So.2d 173.
We find nothing in the record to impeach or discredit plaintiff's testimony. Dr. Melilli testified as to the nature of plaintiff's injury, but did not speculate on the possibility of causal relationship between plaintiff's alleged accident and plaintiff's medical condition. Dr. Melilli's testimony is relevant insofar as it pertains to plaintiff's medical condition. It confirms the diagnosis given by Dr. Plauche. Dr. Plauche stated that an acute lumbosacral strain would have manifested itself within 24 to 48 hours of an accident. He explained that it would produce discomfort, make heavy labor difficult, and result in either a slowed rate of job performance and/or complaints of pain. Dr. Plauche conceded, however, that successive back strains would be consistent with plaintiff's medical condition. It appears that the medical evidence corroborates plaintiff's statements because plaintiff testified in effect that he sustained a back strain on August 23, 1968, which was aggravated by his continued lifting of heavy objects during the ensuing week. The inconsistencies in plaintiff's testimony were attributed by the trial court to plaintiff's low-grade mentality and limited education. We find no error in this determination.
The judgment of the trial court is affirmed at appellants' cost.
Affirmed.